ROBERT MURBACH, Plaintiff-Appellee, *v.* DAVID ANDERSON *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-1755

Opinion filed May 18, 1981.—Rehearing denied June 22, 1981.

Law Office of Harry J. Smith, Jr., of River Grove (Harry J. Smith, Jr., and Lawrence J. Czepiel, of counsel), for appellants.

Cotton, Watt, Jones, King & Bowlus, of Chicago (John M. Bowlus and Stephen D. Froikin, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Robert Murbach (plaintiff) sought a position as fireman in the village of Schiller Park, Illinois. The Board of Police and Fire Commissioners of the village (defendants) refused to appoint him. After administrative review, the trial court ordered defendants forthwith to appoint and certify plaintiff to the position. Defendants appeal. For brevity we will not detail the commencement of this litigation in which plaintiff first sought a change in his position on the village eligibility list. We will simply consider the matter from the point of view of the administrative review hearing and the result.

On December 28, 1978, plaintiff filed his application for appointment as fireman. At that time he was employed by the village as a paramedic. In the application plaintiff answered questions as follows:

"Do you use alcohol? No If so, to what extent? Frequently_____ Moderately _____ Occasionally _____. Any drugs: No Narcotics No ."

Thereafter plaintiff appeared before the defendants for an oral test. The record contains oral test rating sheets filled in by each of the defendants. The sheets contain boxes for check marks to indicate rating of the applicant as excellent, passable, fair, or poor. These ratings pertain to subjects such as "Appearance," "Manner," "Emotions," etc. In all, each defendant graded plaintiff on 20 varying subjects. One subject, under the heading "Perception," includes "Drugs, alcohol, sex and morals." All defendants rated plaintiff "Passable" on this topic. In all of the remaining situations all of the defendants rated plaintiff in the group marked "passable." However, each defendant rated plaintiff, "Excellent" as regards "Physique" and thoughts on more schooling. The oral statements plaintiff made to the defendants in this test are not before us. Plaintiff was also interviewed by the village fire department and passed his physical examination.

On December 14, 1979, almost one year later, plaintiff, at request of defendants, appeared for a professionally administered polygraph test. Plaintiff filled in a lengthy questionnaire and submitted to a lie detector test. The questionnaire reflects written responses by plaintiff to a series of

questions including past employment, personal history, etc. Concerning the area "Medical and Social History" the question is asked, "Have you ever taken any of the following without advice of a doctor? If yes, please check." Ten various drugs are then listed with a small box after each name. Plaintiff struck out all of the listings except he placed an "X" in the boxes after cocaine, marijuana, and hashish.

On December 14, 1979, an official report of the polygraph examination was sent to defendants. The examiner described five categories in which plaintiff's answers were described as truthful. The following two paragraphs are:

"(6) Denied using marijuana more than ten times in the last year. (TRUTHFUL) The subject said he has smoked marijuana about ten times in the last year. The last time he smoked marijuana was six months ago.
(7) Denied using narcotics or dangerous drugs illegally more than two times in the last year. (INDEFINITE) The subject said he has used cocaine two times in the last year. The last time the subject used cocaine was five to six months ago."

The letter closed with a statement that when the plaintiff was advised of the results of his examination he stated "he was thinking about the drugs he administers to people in his job as a Paramedic." The letter also stated, "An analysis of this subject's Reid Report indicates his attitude is ACCEPTABLE."

On January 4, 1980, defendants wrote plaintiff a letter which "disqualified" him for appointment. The letter advised plaintiff's sworn application stated he did "not use any drugs nor narcotics." Plaintiff's oral interview reaffirmed this. On the contrary, plaintiff's statement to the polygraph examiner admitted plaintiff "took cocaine, marijuana and hashish."

On April 15, 1980, after a hearing by the defendants, defendants wrote plaintiff a letter in which denial of his appointment was reaffirmed. The defendants stated the answers given by plaintiff concerning use of controlled substances were "misstatements and in fact, falsehoods" and no evidence was presented by plaintiff to "controvert or mitigate" these matters. The letter stated a person who uses "such substances" should not be placed in a "position of responsibility" with the village fire department.

In this court, defendants urge their decision was not contrary to the manifest weight of the evidence, but the record clearly supports the making of false statements of material fact by plaintiff and his disqualification. Defendants also urge the trial court had no authority to certify plaintiff as a fireman. Plaintiff responds there is no evidence of falsity in his application and no evidence plaintiff is a regular user of drugs.

Regarding the issue of the weight of the evidence, the guiding principles are clear. The findings by an administrative body are prima facie correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) On administrative review the court will not reweigh the evidence but will seek to determine whether the decision of the administrative body "is just and reasonable in light of the evidence presented." *Davern v. Civil Service Com. of the City of Chicago* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. den.* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.

The supreme court has stated the converse of the above proposition (*Monsanto Co. v.Pollution Control Board* (1977), 67 Ill. 2d 276, 289, 367 N.E.2d 684):

"Nonetheless, if the factual determinations of the Board, or of any administrative agency, are contrary to the manifest weight of the evidence, the reviewing court is empowered to reverse the agency's findings. [Citations.]"

In the case before us, it is difficult to determine whether the decisive issue is factual or whether it is legal. In our view we need not solve this problem as demonstrated by the following.

As shown, plaintiff's employment application was made to defendants on December 25, 1978. On that date plaintiff stated in writing and under oath that he did not "use" alcohol or any drugs or narcotics. However, statements which plaintiff made in the polygraph test on December 14, 1979, which specifically applied only to the "previous year," could not show this employment statement was false. Consequently, a finding by defendants that plaintiff told an untruth in his employment application would be totally unsupported by the evidence.

In addition, as plaintiff contends, the employment application was in the present tense and asked plaintiff whether he uses drugs. The questionnaire pertaining to the polygraph test used the verb "to take" and asked plaintiff whether he had taken certain drugs. The dictionary defines the word "take" with reference to eating or drinking as "to introduce or receive into one's body." (Webster's Third New International Dictionary 2330 (1971).) On the contrary, the dictionary defines "use" as "to consume or take (as liquor or drugs) regularly." Webster's Third New International Dictionary 2524 (1971).

A statement plaintiff did not *use* alcohol, drugs, or narcotics made as of December 25, 1978, is not inconsistent with plaintiff's statement of December 14, 1979, that he had *taken* cocaine, marijuana, and hashish. The polygraph report shows plaintiff had used marijuana about 10 times during the preceding year, and his last use was some six months prior to that date of the report. Thus, the finding by defendants in this regard is unsupported by the evidence.

Defendants' letter to plaintiff dated January 4, 1980, stated plaintiff's

oral interview restated and reaffirmed his application for employment dated December 28, 1978. However, the record does not contain the questions put by defendants in the oral interview or responses made by plaintiff. As shown, the record reflects mere generalities concerning this entire matter. No additional evidence regarding the oral interview appears in the record.

The letter of January 4, 1980, also stated the polygraph questionnaire submitted by plaintiff was contrary to the application of December 1978. As shown, this apparent conflict did not actually exist. It was predicated upon confusion between the verbs "to use" and "to take." Thus, treating the letters of January 4, 1980, and of April 15, 1980, as findings of fact, we conclude they are unsupported by the evidence.

Defendants urge strongly the use of controlled substances is detrimental to others and to the operation of the village fire department. In our opinion the defendants are to be commended for this point of view. It stems properly from their laudable desire to give their constituents the best possible service as regards fire fighting and other municipal responsibilities. However, this court is obliged to add one more aspect to this salutary point of view. It is our duty to protect the rights of applicants for employment and to make certain that denial of employment is predicated upon proper legal principles.

The pertinent statute provides applicants for positions in fire or police departments of a municipality "shall be subject to reasonable limitations as to residence, health, habits and moral character." (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—6.) The same section of the statute lists a number of crimes, including misdemeanors, which disqualify the applicant from a police or fire appointment. Violations regarding controlled substances are not included in this enactment.

Thus, the possession of less than 2.5 grams of marijuana, hashish, or cannabis is presently a Class C misdemeanor. (Ill. Rev. Stat. 1979, ch. 56½, par. 704(a).) But, that misdemeanor is not listed among the statutory causes for denial of employment.

The denial of employment to plaintiff was thus contrary to the evidence and contrary to law.

Defendants raise a fine point regarding the language of the order appealed from. The order provided defendants "shall forthwith appoint and certify the plaintiff as a firefighter in the Schiller Park Fire Department effective June 15, 1980." This litigation commenced as a mandamus case but the final order dismissed the mandamus count in plaintiff's complaint. Thus, we are not dealing here with a situation in which the court has intermingled the relief sought in mandamus and in administrative review. (Compare *Basketfield v. Daniel* (1979), 71 Ill. App. 3d 877, 390 N.E.2d 492, *appeal denied* (1979), 79 Ill. 2d 609.) In an administrative review

case, such as we have before us, the circuit court had legal power "to affirm or reverse the decision in whole or in part." (Ill. Rev. Stat. 1979, ch. 110, par. 275(1)(e).) The able trial judge properly exercised that power by reversing the administrative decision. In our opinion the trial court had full authority to direct appointment and certification of plaintiff as he did. Compare *Basketfield*, 71 Ill. App. 3d 877, 880-81; see also *Sola v. Clifford* (1975), 29 Ill. App. 3d 233, 237, 329 N.E.2d 869.

The order appealed from is affirmed.

Order affirmed.

McGLOON and O'CONNOR, JJ., concur.